# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN J. BENNETT,<br>44 Church Rd.<br>Tunkhannock, PA 18657,<br><br>*Plaintiff*<br><br>v.<br><br>TROOPER JAIME LOPEZ,<br>*In his Individual Capacity*<br>915 State Rte. 6 W.<br>Tunkhannock, PA 18657<br><br>and<br><br>TROOPER GABRIEL L. PADUCK,<br>*In his Individual Capacity*<br>915 State Rte. 6 W.<br>Tunkhannock, PA 18657,<br><br>*Defendants*. | JURY TRIAL DEMANDED<br><br>CIVIL ACTION<br><br>CASE NO. 3:17-cv-02031-ARC<br><br><br><br>**AMENDED COMPLAINT**<br><br><br><br>FILED ELECTRONICALLY |

**COMPLAINT**

**I. INTRODUCTION**

1. This is an action for damages brought under 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, the Fourteenth Amendment, and for violations of Pennsylvania State law.

1

## II. **JURISDICTION AND VENUE**

2.      The foregoing paragraphs are incorporated herein by reference.

3.      This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the Fourth Amendment, and the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. § 1331 and the previously mentioned statutory and Constitutional provisions.

4.      Plaintiff invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide claims under state law as the state law claims are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper under 28 U.S.C. § 1391 in this Court because the conduct complained of occurred here and at least one defendant resides here.

## III. **PARTIES**

6.      The foregoing paragraphs are incorporated herein by reference.

7.      Steven J. Bennett ("Plaintiff") is an adult individual who resides at 44 Church Road, Tunkhannock, Pennsylvania 18657.

8. Jaime Lopez ("Lopez") is, and was at all times relevant to this complaint, a Pennsylvania State Police ("PSP") Trooper employed by the Commonwealth of Pennsylvania and acting under color of state law.

2

9. Gabriel L. Paduck ("Paduck") is, and was at all times relevant to this complaint, a PSP Trooper employed by the Commonwealth of Pennsylvania and acting under color of state law.

10. At all relevant times hereto, and in their actions and inactions, Defendants were acting alone and in concert under color of state law.

11. At all relevant times hereto, Lopez and Paduck were acting directly or indirectly on behalf of the Commonwealth of Pennsylvania.

12. At all times relevant hereto, Lopez and Paduck were acting in the course and scope of their agency, authority, and/or employment with the Commonwealth of Pennsylvania and under color of state law.

13. Defendants are jointly and severally liable for the injuries and damages suffered by Plaintiff as set forth fully below.

## IV. **STATEMENT OF CLAIM**

14. The foregoing paragraphs are incorporated herein by reference.

15. On or about May 12, 2017, Tunkhannock Borough police officers arrested Plaintiff on criminal charges and transported him to the Tunkhannock PSP Barracks.

16. At the Tunkhannock PSP Barracks, Lopez and Paduck took custody of Plaintiff.

3

17. Lopez and Paduck transported Plaintiff to Magisterial District Judge David K. Plummer's ("Judge Plummer") office for a preliminary arraignment.

18. Plaintiff was handcuffed and had a waist belt on that prevented him from raising his arms.

19. Plaintiff was handcuffed at all relevant times while at Judge Plummer's office.

20. While at Judge Plummer's office, Plaintiff was instructed to, and did in fact, sit in a chair at a table in front of Judge Plummer's bench.

21. Paduck was at the table to the right of Plaintiff.

22. Lopez went into Judge Plummer's chambers for a period of time and then exited back into the courtroom where Paduck and Plaintiff were seated.

23. Judge Plummer came out of his chambers and began reviewing documents on or about his bench.

24. Plaintiff asked Judge Plummer about getting a protection from abuse order and was instructed he should go to the Wyoming County Courthouse on their next business day.

25. During the arraignment, Plaintiff slightly pushed himself away from the table where he was seated.

4

26. Judge Plummer finished reading the charges to Plaintiff and asked him to sign the arraignment paperwork.

27. Plaintiff remained seated with his chair pushed slightly away from the table.

28. Judge Plummer then asked Plaintiff to sign the arraignment paperwork again.

29. Plaintiff replied that he had a right to remain silent.

30. Plaintiff and Judge Plummer then discussed whether Plaintiff would sign the arraignment documents.

31. Plaintiff then leaned forward slightly, in a non-threatening and non-aggressive manner, in his chair.

32. At this time, Lopez was standing next to Judge Plummer at the front of the table where the Plaintiff was seated.

33. Paduck was standing to the right of Plaintiff at the side of the table where Plaintiff was seated.

34. When Plaintiff leaned forward slightly, Lopez put his hand on Plaintiff's shoulder and chest.

35. Plaintiff then leaned back in his chair, presumably as instructed by Lopez

5

36.     Lopez then struck Plaintiff across the face so hard that he caused a small laceration on Plaintiff's cheek.

37.     Plaintiff had visible marks, including a red handprint blotch, on his facial area from the blow struck by Lopez.

38.     Lopez then attacked Plaintiff by grabbing him around his neck.

39.     Lopez placed plaintiff in a headlock and/or chokehold and began to strangle Plaintiff.

40.     Plaintiff's face turned visibly red while Lopez was choking him.

41.     Even though Plaintiff was not resisting, engaging in any threatening behavior, was seated, and was handcuffed, Lopez struck him in the face and then placed him in a headlock or choke hold.

42.     Lopez's headlock or chokehold of Plaintiff was not a fleeting incident.

43.     Lopez maintained his chokehold or headlock on Plaintiff for approximately twenty-three (23) seconds.

44.     During the time Plaintiff was in the chokehold or headlock, he did not resist Lopez and did not get up from his chair.

45.     During the headlock or chokehold, Lopez also twisted Plaintiff's head around and pulled on him violently enough to move Plaintiff's entire body in his chair and tip his chair back slightly.

46. Plaintiff experienced, among other things, pain in his left ear, pain in his left facial area, pain in his left eye socket, and a severe headache.

47. Plaintiff was most likely concussed by the blow that Lopez delivered to his face as he experienced some concussion symptoms including headache and loss of memory.

48. Paduck was standing in front of the table where Plaintiff was seated and was standing next to Judge Plummer when Lopez's assault on Plaintiff began.

49. When Lopez attacked Plaintiff, Paduck walked around the right side of the table where Plaintiff was seated and stood next to Lopez.

50. Paduck did not make any attempt to stop Lopez from assaulting Plaintiff.

51. After standing next to Lopez for a few seconds, Paduck returned to the front of the table and sifted through paperwork while Lopez continued his assault upon Plaintiff.

52. Plaintiff asked Lopez why he struck him to which Lopez replied because Plaintiff called him ignorant earlier that day at Tunkhannock PSP Barracks.

53. After Lopez's assault was over, he pulled off his nametag, broke the pin off of the back of the nametag, and placed it on Plaintiff's midsection.

Trooper Lopez's name plate was in Plaintiff's possession when he was lodged at the Wyoming County Correctional Facility. A picture of Lopez's name tag is attached to this complaint as Exhibit A.

54. Paduck then allowed Lopez to escort Plaintiff out of the courtroom despite the fact that he had just physically assaulted Plaintiff.

55. While exiting Judge Plummer's office, Lopez grabbed the waist band attached to Plaintiff's handcuffs and shook Plaintiff unnecessarily and violently.

56. Plaintiff was escorted to the PSP vehicle.

57. Plaintiff was frightened by what had just occurred and began to hyperventilate.

58. Plaintiff's fear was well founded since a PSP trooper just assaulted him while he was in custody in a courtroom without so much as a word of reprimand from Paduck.

59. The only people in the courtroom were Plaintiff, Judge Plummer, Paduck, and Lopez.

60. Plaintiff requested to be taken to the hospital for his injuries.

61. Lopez told Plaintiff that he would not be taken to the hospital.

62. After numerous and repeated demands, an ambulance was summoned to transport Plaintiff to the hospital.

63.     Plaintiff was transported to Tyler Memorial Hospital to be treated for his injuries.

64.     Paduck and Lopez accompanied Plaintiff to the hospital.

65.     After being discharged from the hospital, Paduck and an officer from Tunkhannock Borough transported Plaintiff to the Wyoming County Prison.

66.     Upon information and belief, PSP internal affairs has opened a criminal investigation into Lopez's conduct described above.

67.     The above described assault was captured on video. Plaintiff will serve a copy of the video on each party and the Court via United States Postal Service, postage prepaid.[1]

68.     Detective David Ide, of the Wyoming County, County Detectives, spoke with Judge Plummer regarding this incident.

69.     During this conversation, Detective Ide asked Judge Plummer if at anytime he felt that he was in danger or the threat of danger as the result of Plaintiff's actions or words during the incident described above.

70.     Judge Plummer responded by stating "No I never felt threaten[d] or anything like that."

*Count I – 42 U.S.C. § 1983 Fourth Amendment Excessive Force*

---

[1] Plaintiff specifically incorporates the video as Exhibit B to this complaint.

9

71. The foregoing paragraphs are incorporated herein by reference.

72. The Defendants in this case are persons within the meaning of 42 U.S.C. § 1983.

73. At all relevant times, the Defendants were acting under color of law within the meaning of 42 U.S.C. § 1983.

74. While acting under color of law, Defendants caused Plaintiff to be subjected to a deprivation of rights, liberties, and immunities secured by the Constitution. Namely, Defendants caused Plaintiff to be deprived of the rights, liberties, and immunities that he is granted under the Fourth Amendment, Fourteenth Amendment, and Pennsylvania's Constitution.

75. Plaintiff was handcuffed and under the control of police at all times in Judge Plummer's office.

76. Plaintiff was not permitted to freely leave Judge Plummer's office.

77. Plaintiff believed he was not permitted to leave at all times relevant to this complaint.

78. Plaintiff was seized within the meaning of the Fourth Amendment.

79. Plaintiff was seized within the meaning of the Fourth Amendment by Trooper Lopez's unwarranted assault.

80.     Lopez's use of force by striking Plaintiff in the face was an unreasonable use of force under the circumstances.

81.     Lopez's use of force by choking Plaintiff, placing Plaintiff in a headlock, twisting Plaintiff's head and neck, and pulling on Plaintiff in a violent manner was an unreasonable use of force under the circumstances.

82.     Lopez's use of force by shaking Plaintiff via the handcuff waistband was an unreasonable use of force under the circumstances.

83.     Paduck had a duty to intervene to stop Lopez from using excessive force on Plaintiff.

84.     The headlock and/or chokehold portion of Lopez's assault lasted for twenty-three (23) seconds and Paduck did nothing during this time to stop or end the assault.

85.     Judge Plummer and Paduck said nothing and did nothing when Lopez assaulted Plaintiff.

86.     Judge Plummer and Paduck said nothing and did nothing after Lopez assaulted Plaintiff.

87.     Paduck also had reason to believe that Lopez was committing a constitutional violation because he observed Lopez strike an unarmed and handcuffed man in the face during a court proceeding and he observed Lopez place Plaintiff in a headlock and/or chokehold that lasted for a

11

sustained period of time, during which Lopez also twisted Plaintiff's head and neck and thrashed Plaintiff around.

88. Lopez's above-described conduct was intended to injure Plaintiff in that he struck him directly in the face, without provocation or reason, when Plaintiff was completely defenseless since he was handcuffed and unarmed.

89. Lopez's above-described conduct was intended to injure Plaintiff in that he placed Plaintiff in a chokehold and/or headlock, twisted Plaintiff's head and neck, and pulled on Plaintiff's head and neck in a violent manner as described above, when Plaintiff was completely defenseless since he was handcuffed and unarmed.

90. At all times relevant to this complaint, it was clearly established that striking Plaintiff in the face, placing him in a chokehold and/or headlock, choking him, twisting his head and neck, pulling on his head and neck in a violent manner, and shaking him via the handcuff waist band, was unreasonable and an excessive use of force.

91. A reasonable person would have realized that the above described conduct was an unreasonable and excessive use of force.

92. As a result of the above described conduct, Plaintiff suffered actual damages in the form of medical bills, emotional distress, fear, humiliation, embarrassment, pain, and suffering.

93.     Lopez and Paduck's conduct was outrageous, willful, and wanton.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, punitive damages, costs, and attorney's fees.

*Count II – 42 U.S.C. § 1983 Fourteenth Amendment Excessive Force*

94.     The foregoing paragraphs are incorporated herein by reference.

95.     Lopez's conduct in this case shocks the conscience.

96.     Lopez conduct shocks the conscience since he struck an unarmed and handcuffed individual in the face while he was in a courtroom for no other reason than to terrorize and intimidate Plaintiff.

97.     Lopez conduct shocks the conscience since he placed an unarmed and handcuffed individual in a chokehold and/or headlock, while twisting Plaintiff's head and neck and pulling on his head and neck in a violent manner, for a sustained period of time while Plaintiff was in a courtroom for no other reason than to terrorize and intimidate Plaintiff.

98.     All people should feel safe and secure in courtrooms.

99.     In this case, Lopez physically terrorized Plaintiff during a court proceeding, which magnifies the egregiousness of his assault on Plaintiff.

100.    Plaintiff also was not being aggressive or threatening to anyone, which magnifies the egregiousness of his assault on Plaintiff.

101. Lopez's conduct shocks the conscience since he shook an unarmed and handcuffed individual by his handcuff waist band for no other reason than to terrorize and intimidate Plaintiff.

102. The above-described force used by Lopez was severe and disproportionate to the need presented.

103. In fact, there was absolutely no need for Lopez to use any type of force upon Plaintiff since Plaintiff was unarmed, handcuffed, and was not being combative, aggressive, or threatening.

104. Lopez's actions were inspired by malice or sadism since he intended to physically harm Plaintiff for no apparent reason other than Plaintiff allegedly calling Lopez and Paduck ignorant earlier in the day.

105. Additionally, Lopez's actions were inspired by malice or sadism since he intended to physically harm Plaintiff without provocation or reason while Plaintiff was completely restrained and had absolutely no ability to defend himself. Plaintiff was handcuffed and had a handcuff belt on; he could not even raise his arms to his shoulders to block Lopez's strike to his face or to escape and/or resist Lopez's chokehold and/or headlock.

106. Lopez's actions amounted to a brutal and inhumane abuse of power since he physically abused Plaintiff, while the Plaintiff was completely

defenseless, for no apparent reason, other than Plaintiff allegedly called Lopez ignorant earlier in the day.

107. Lopez's conduct was offensive and brutal because, among other things, he struck an unarmed and handcuffed man in the face during a proceeding in a Pennsylvania court without provocation or reason.

108. Lopez's conduct was offensive and brutal because, among other things, he placed an unarmed and handcuffed man in a chokehold and/or headlock, twisted Plaintiff's head and neck, and pulled on Plaintiff's head and neck in a violent manner during a proceeding in a Pennsylvania court without provocation or reason.

109. Lopez's conduct was intended to terrorize and intimidate Plaintiff.

110. Lopez's above-described conduct was intended to injure and humiliate Plaintiff in that he struck him directly in the face and placed him in a chokehold and/or headlock, without provocation or reason, when Plaintiff was completely defenseless since he was handcuffed and unarmed.

111. At all times relevant to this complaint, it was clearly established that striking Plaintiff in the face, placing him in a chokehold and/or headlock, twisting Plaintiff's head and neck, pulling on Plaintiff in a violent manner by his head and neck, and shaking him via the handcuff waistband was unreasonable and an excessive use of force.

112. A reasonable person would have realized that the above described conduct was an unreasonable and excessive use of force.

113. Defendants conduct was outrageous, willful, and wanton.

114. As a result of the above described conduct, Plaintiff suffered actual damages in the form of medical bills, emotional distress, fear, embarrassment, humiliation, pain, and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages, punitive damages, costs, and attorney's fees.

*Count III – Assault*

115. The foregoing paragraphs are incorporated herein by reference.

116. Lopez intended to make physical contact with Plaintiff when he struck him in the face, placed him in a chokehold and/or headlock, and shook Plaintiff by the handcuff waist band that he was wearing.

117. Lopez intended to make harmful or offensive contact with Plaintiff when he struck him in the face, placed him in a chokehold and/or headlock, and shook Plaintiff by the handcuff waist band that he was wearing.

118. As described-above, Lopez conduct was completely unreasonable under the circumstances.

119. Lopez did in fact make physical contact with Plaintiff when he struck him in the face, placed him in a chokehold and/or headlock, and shook Plaintiff by the handcuff waist band that Plaintiff was wearing.

120. Plaintiff never consented to the physical contract initiated by Lopez.

121. The physical contact described above was not warranted by Plaintiff.

122. Lopez's above-described conduct was intended to injure Plaintiff in that he struck him directly in the face, without provocation or reason, when Plaintiff was completely defenseless since he was handcuffed and unarmed.

123. Lopez's above-described conduct was intended to injure Plaintiff in that he placed him in a chokehold and/or headlock, twisted his head and neck, and pulled on his head and neck in a violent manner, without provocation or reason, when Plaintiff was completely defenseless since he was handcuffed and unarmed.

124. Lopez's conduct was outrageous, willful, and wanton given that he struck Plaintiff in the face and placed Plaintiff in a chokehold and/or headlock, without provocation or reason, during a Pennsylvania Court proceeding when Plaintiff was completely defenseless.

125. As a result of the above described conduct, Plaintiff suffered actual damages in the form of medical bills, emotional distress, fear, humiliation, pain, and suffering.

**WHEREFORE**, Plaintiff demands judgment against Defendants for actual damages and punitive damages.

## V. DEMAND FOR JURY TRIAL

126. The foregoing paragraphs are incorporated herein by reference.

127. Plaintiff hereby demands a jury trial.

**WHEREFORE**, Plaintiff demands judgment against Defendants for

    a. Actual damages;

    b. Punitive damages;

    c. Attorney's fees;

    d. Costs;

    e. Interest; and

    f. Any further relief that the Court deems just and proper.

Respectfully Submitted,

*s/ Leonard Gryskewicz, Jr.*
Leonard Gryskewicz, Jr.
Attorney for Plaintiff
PA321467

Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838
Email: lenny@lampmanlaw.com

*s/ David V. Lampman, II*
David V. Lampman, II
Attorney for Plaintiff
PA93332
Lampman Law
2 Public Sq.
Wilkes-Barre, PA 18701
Phone: (570) 371-3737
Fax: (570) 371-3838
Email: david@lampmanlaw.com