# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN J. BENNETT,** | : | **Civil No. 3:17-CV-2031** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Jones)[1]** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JAIME LOPEZ, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

## I. Introduction

This case comes before us on cross-motions for summary judgment and aptly illustrates the limitations of such motions. Indeed, both parties appear to rest their arguments and pleadings upon a video recording of the events which gave rise to this lawsuit, and both sides claim that this recording, which lacks an audio component, entitles them to judgment as a matter of law. Plainly both of these propositions cannot be correct. Simply put, this video cannot simultaneously lend irrefutable factual support to two contradictory legal conclusions. In fact, we find

---

[1] This case was originally assigned to the Honorable A. Richard Caputo who previously denied a motion to dismiss in this case which raised issues similar to some of those presented here. Upon Judge Caputo's passing, this case was reassigned to Chief Judge Jones, who in turn referred these summary judgment motions to the undersigned.

that the video may define, but does not resolve, what are disputed issues of fact. Our careful review of this recording is inhibited by its lack of audio, and thus we are unable to ascertain many of the key details surrounding the escalation and ultimate use of force by defendant Pennsylvania State Trooper Jamie Lopez against the plaintiff, Steven Bennett, during the plaintiff's arraignment on criminal charges. These details remain disputed by the parties and thus render summary judgment inappropriate in this case.

The plaintiff filed this action against the defendants, Pennsylvania State Troopers Jamie Lopez and Gabriel Paduck, pursuant to 42 U.S.C. § 1983, alleging claims of excessive force and failure to intervene under the Fourth and Fourteenth Amendments to the United States Constitution and supplemental claims of assault under state law. These claims arise out of an incident that occurred on May 12, 2017 during Bennett's arraignment on criminal charges after he was arrested for a domestic altercation at his home. Bennett alleges that during this arraignment, he was the victim of excessive force at the hands of the defendants even though he remained handcuffed and compliant throughout the proceeding. Specifically, he claims that Trooper Lopez unjustifiably slapped him across the face and placed him in a headlock after he attempted to lean forward to sign paperwork presented to him by the judge during his arraignment. Despite this showing of what Bennett classified as an unjustified and excessive use of force by Trooper Lopez, Bennett claims that

Trooper Paduck merely stood by and failed to intervene to cease Trooper Lopez's assault upon Bennett.

For their part, the defendants contend that Trooper Lopez had cause to restrain Bennett since it appeared to the Troopers over the course of the arraignment that Bennett had become more agitated and aggressive toward the judge. In particular, it appeared to Trooper Lopez that Bennett was attempting to lunge at the judge, and that restraint measures were warranted. Thus, the defendants assert that the steps taken by Trooper Lopez were reasonable, appropriate, and reflected a progressive and measured use of force to restrain Bennett and protect the judge during the arraignment. Trooper Paduck agreed, alleging that he did not intervene to stop Trooper Lopez's actions since he thought them appropriate under the circumstances and did not feel that Trooper Lopez needed assistance. The defendants also assert that since the use of force was reasonable in this case, they are entitled to qualified immunity.

After a careful review of the record, we find that there are genuine issues of material fact which cannot be resolved by the video recording that preclude summary judgment on the federal and state law claims against these defendants. Accordingly, for the reasons that follow, we will recommend that both parties' motions for summary judgment be denied.

## II.   **Statement of Facts and of the Case**

The undisputed facts giving rise to this lawsuit can be simply stated. On May 12, 2017, the plaintiff, Steven Bennett, was arrested by Tunkhannock Borough police officers after they responded to a domestic dispute at Bennett's home which resulted in criminal charges. (Doc. 15, ¶ 15; Doc. 69, ¶ 1). Bennett was then brought to Pennsylvania State Police barracks where he remained until Troopers Lopez and Paduck took custody of him when they came on duty that evening. (Doc. 15, ¶ 16; Doc. 69, ¶ 2). Thereafter, Bennett was transported to Magisterial District Judge David K. Plummer's office for a preliminary arraignment on these charges. (Doc. 15, ¶ 17; Doc. 61, ¶ 13; Doc. 69, ¶ 3). Bennett was placed in handcuffs and a transport belt, which he wore throughout the proceedings. (Doc. 61, ¶ 14; Doc. 15, ¶ 19). The parties do not appear to dispute that their interactions up to this point remained civil and professional. (Doc. 69, ¶¶ 2, 4-5; Bennett Dep. at 51-56).

Upon arrival in Judge Plummer's courtroom, the interactions between Bennett and Troopers Lopez and Paduck, and, in turn, the events giving rise to this lawsuit were recorded by a camera in the front corner of the courtroom. (Doc. 15, ¶ 67, Ex. B). This video recording does not include an audio component. (Doc. 15, Ex. B). Troopers Lopez and Paduck remained with Bennett for some 17 minutes until Judge Plummer emerged from his office to complete some paperwork for Bennett's arraignment. (Doc. 15, Ex. B; Doc. 61, ¶ 17). During this time, Bennett and Troopers

Lopez and Paduck can be seen waiting for the judge's arrival, sometimes sitting, sometimes standing, and generally exchanging conversation, though the tone, precise words, and volume of this conversation cannot be ascertained through the video recording and remains subject to some dispute by the parties.[2] (Doc. 15, Ex. B; Doc. 71-3, Plummer Dep. at 11).

Judge Plummer eventually appears and begins to prepare and review arraignment paperwork with Bennett at counsel table where Bennett is seated. (Id.; Doc. 61, ¶¶ 18-20). According to Troopers Lopez and Paduck, the interactions between Bennett and Judge Plummer became increasingly tense and aggressive as the arraignment progressed. (Doc. 69, ¶¶ 28-31, 33-36). On the video recording, Troopers Lopez and Paduck appear to stand up and move next to Bennett and Judge Plummer in response to Bennett standing up. (Doc. 15, Ex. B). Bennett eventually returns to his seat, which he shifts back away from the table and Judge Plummer. (Id.) In response, Judge Plummer appears to lean toward Bennett across the table, though without the benefit of the audio recording, it is difficult to tell what inspires this gesture by the judge. (Id.)

---

[2] Judge Plummer claims that he could hear Bennett "hooting and hollering" from the time Bennett entered the courtroom until Judge Plummer appeared and that Bennett was generally loud during this time. (Doc. 71-3, Plummer Dep. at 11). In contrast, Bennett asserts that the interactions between himself and the Troopers were generally civil and professional during this time. (Bennett Dep. at 51-56).

What transpired next happened quickly and forms the basis of this lawsuit and the disputed motions for summary judgment. Bennett appears to move his chair back to the position it was in before he had shifted it away from the table and Judge Plummer appears to return to his side of the table. (Id.) Bennett then shifts forward in his seat toward Judge Plummer. (Id.) In response, Trooper Lopez reaches out to put his hand on Bennett's shoulder and chest in an apparent attempt to prevent him from moving closer to Judge Plummer. (Id.) Trooper Lopez appears to try to push Bennett back into his seat accompanied by some verbal command which the parties agree was a request for Bennett to stay where he was and not go closer to Judge Plummer. (Id.; Doc. 61, ¶ 29; Doc. 69, ¶¶ 50-51, 59). Mere seconds after Trooper Lopez attempted to push Bennett back in his chair, the video shows that there was some continuing exchange of words between the participants to the hearing which escalated the tension to the point that Trooper Lopez slapped Bennett—who remains handcuffed—across the side of the face. (Doc. 15, Ex. B). Bennett appeared angry and made a move to stand up at which time Trooper Lopez jumped around Bennett's chair and placed Bennett in a secure hold around his neck. (Id.) Trooper Lopez maintained this hold until it appeared that Bennett had calmed down again at which time he was released. (Id.) During this scuffle, Bennett appears to be yelling at Trooper Lopez while Trooper Paduck, after assessing the situation, maintains his

position near the table and Judge Plummer continues working on Bennett's paperwork. (Id.)

Shortly after this exchange, Bennett requested Trooper Lopez's badge information, and Trooper Lopez can be seen removing his name tag, breaking off the pin on the back, and placing this name tag onto Bennett's midsection. (Doc. 15, Ex. B; Doc. 69, ¶ 67). Lopez is also seen gesturing emphatically at Bennett, pointing his finger and Bennett as he speaks to him. Thereafter, Bennett is removed from the courtroom and led out to the Troopers' patrol car to be taken to the Wyoming County Correctional Facility, his place of employment. (Doc. 69, ¶ 75). Once secured in the Troopers' patrol car, Bennett began complaining of shortness of breath and was hyperventilating. (Doc. 61, ¶ 45; Doc. 69, ¶¶ 73-74). To ensure Bennett's safety, an ambulance was called, and Bennett was transported to Tyler Memorial Hospital for evaluation. (Doc. 61, ¶ 45; Doc. 69, ¶ 73; Doc. 75, ¶ 18). After being discharged with minimal treatment, Bennett was taken to the Wyoming County Correctional Facility. (Doc. 75, ¶ 22; Doc. 61, Ex. 4).

On the basis of these facts, Bennett brought the instant lawsuit, setting forth claims pursuant to 42 U.S.C. § 1983 alleging excessive force and failure to intervene under the Fourth and Fourteenth Amendments to the United States Constitution and supplemental claims of assault under state law. (Doc. 15). The parties have filed cross-motions for summary judgment, each asserting that the video recording of the

events on May 12, 2017 provides the requisite support for this court to award summary judgment in their favor. (Docs. 62, 68, 74). We disagree, finding that the lack of audio on the video recording inhibits our ability to make important contextual determinations regarding the interactions between Bennett and the defendants necessary to award summary judgment for either party. We will accordingly recommend that these cross-motions for summary judgment be denied.

## III.   Discussion

### A.   Motion for Summary Judgment – Standard of Review

The parties have filed cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a

material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most

favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

**B.** **Excessive Force Claims Under Section 1983 and Failure to Intervene**

Bennett alternatively asserts claims for excessive force under the Fourth and Fourteenth Amendments to the United States Constitution depending upon whether he is found to have been an arrestee or a pretrial detainee at the time he alleges that excessive force was exerted upon him. (Doc. 15). We do not find that either party is entitled to summary judgment under either legal standard, and accordingly do not reach a determination as to Bennett's legal status at the time of the alleged excessive force in this case. We take up both standards below.

Initially, Bennett brings his excessive force claims pursuant to 42 U.S.C. § 1983, which provides a private cause of action for the violation of a federal constitutional right. "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to prevail on a section 1983 claim, the plaintiff must establish that the defendant deprived the plaintiff of a right secured by the United

States Constitution while acting under color of state law. See Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995). Neither party disputes that the defendants were acting under color of state law in this case. Thus, the only remaining question is whether the defendants "deprived the plaintiff of a right secured by the United States Constitution." See id. In this case, Bennett claims that his Fourth and Fourteenth Amendment rights were violated depending upon his legal status at the time of the alleged assault.

As previously explained by Judge Caputo when ruling on the motion to dismiss filed in this case,

> Courts in the Third Circuit have encountered difficulty in defining precisely when an individual transitions from an arrestee to a pre-trial detainee. See, e.g., United States v. Johnstone, 107 F.3d 200, 207 (3d Cir. 1997) ("Where the seizure ends and pre-trial detention begins is a difficult question."); Hill v. Algor, 85 F. Supp. 2d 391, 402-04 (D.N.J. 2000) (collecting cases from various circuit courts of appeals representative of disagreement regarding when a seizure ends and pretrial detention begins). The Fourth Amendment clearly applies to government conduct during the course of an arrest, and it continues during transportation of an arrestee to the police station. See Groman v. Twp. of Manalapan, 47 F.3d 628, 633-34 (3d Cir. 1995) (analyzing alleged excessive force used by police to transport arrestee from a police vehicle into the station under the Fourth Amendment). Once station house detention ensues, courts have evaluated factors such as the length of time in custody, whether the arrestee has been transferred out of the custody of the arresting officers, and whether the arrestee has been arraigned to determine whether an arrestee's constitutional protections derive from the Fourth or the Fourteenth Amendment. Dull v. West Manchester Twp. Police Dep't, No. 07-307, 2008 WL 717836, *9 (M.D. Pa. Mar. 17, 2008) (citing Stephens v. City of Butler, Ala., 509 F. Supp. 2d 1098, 1108-09 (S.D. Ala. 2007)).

> Here, given the facts alleged in the Amended Complaint, i.e., the use of force occurred after the preliminary arraignment was commenced but before it was concluded, it is not clear at present whether Bennett was an arrestee or a pre-trial detainee. <u>See, e.g.</u>, <u>Fuchs v. City of Farrell</u>, No. 10-998, 2011 WL 1706541, *6 (W.D. Pa. Apr. 7, 2011) ("The majority of circuits hold that the Fourth Amendment applies until an individual arrested without a warrant appears before a neutral magistrate for arraignment or for a probable cause hearing or until the arrestee leaves the joint or sole custody of the arresting officer or officers.").

(Doc. 31). Given the unclear state of the law on this score, and the parties' continued dispute regarding which standard is applicable, we do not find it necessary to determine Bennett's precise legal status at this time since we find that summary judgment is not warranted under either standard.

Turning first to the Fourth Amendment, which applies to protect arrestees from excessive force used by state officials, and its standards governing these claims, we note that a court must weigh "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. <u>Graham</u>, 490 U.S. at 396. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Couden v. Duffy</u>, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); <u>see also</u> <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir. 1997). In making this determination, courts may consider, among other

factors, "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are further instructed that the circumstances must be considered from "the perspective of a reasonable officer on the scene." Id.

In this case, we cannot say that either party is entitled to summary judgment under the Fourth Amendment based on the record before us. This is due, in large part, to the material disputes of fact regarding the audio portion of the events depicted on video from May 12, 2017. Taking the facts as the defendants have presented them, the video portrays an escalating situation between Bennett, an individual accused of assaulting his live-in girlfriend, and a magisterial district judge who was tasked with presenting these charges to Bennett. As the tension rose in the room, and the Troopers witnessed Bennett move closer to Judge Plummer after repeated instructions to not go any closer, Trooper Lopez felt the need to take some action to prevent potential harm to Judge Plummer and keep Bennett in his seat at a safe distance from Judge Plummer. Thus, according to the defendants, Bennett posed an immediate safety threat to Judge Plummer, justifying swift action and intervention to avoid harm. The defendants assert that the duration of the force used was minimal—enough to subdue Bennett and gain his compliance—and the amount of force applied was sufficient to achieve this purpose.

If, however, we take the facts as the plaintiff has presented them, then the video portrays Bennett, restrained and compliant, having a discussion with Judge Plummer about his pending charges. While there may have been some direction from the Troopers not to go any closer to Judge Plummer, Bennett alleges that he had complied with these requests and largely remained stationary until leaning forward to examine his arraignment paperwork. According to Bennett, as he moved forward in his seat for this purpose, he was slapped hard on the side of the face by Trooper Lopez, unprovoked, and then placed in a chokehold despite his lack of resistance to the application of force. Thus, Bennett asserts that he posed no immediate threat to Judge Plummer or either of the Troopers due to his handcuffs, he was not resisting the officers, and that the use of force by Trooper Lopez therefore was excessive in light of the circumstances presented.

We find that if there were an audio component to the video recording, some, if not all of these material disputes could be resolved. Without it, we are unable to determine whether Trooper Lopez's use of force was reasonable under the circumstances. Specifically, we lack half of the key events which transpired on May 12, 2017: the words exchanged, the tone used, and the degree of anger or threat that those words conveyed. If, as the Troopers describe, there was an escalating and potentially violent situation arising between Bennett and Judge Plummer based on their words and tone, i.e., incendiary language and yelling, some level of force may

have been justified. In contrast, if Bennett was merely having a discussion with Judge Plummer about his charges and both parties retained a level tone and civil discussion, Trooper Lopez's actions may well have been excessive, unjustified and contrary to Bennett's constitutional rights. However, we may not speculate as to which party presents the correct version of the events on May 12, 2017, as it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Further, the silent video does not provide an answer to this crucial question. Thus, due to this lack of audio, we cannot determine whether the actions of the Troopers were reasonable under the circumstances in this case and accordingly recommend that the cross-motions for summary judgment be denied on Fourth Amendment grounds.

We find that a similar outcome results under Fourteenth Amendment standards. It is "the Due Process Clause [that] protects a pretrial detainee from the use of excessive force" under the Fourteenth Amendment.[3] Graham v. Connor, 490 U.S. 386, 396 (1989). "[A] pre-trial detainee's excessive force claim, under the Fourteenth Amendment Due Process Clause, is determined by whether the intentional use of force was objectively unreasonable, amounting to punishment." Banks v. Tyson, 2015 U.S. Dist. LEXIS 103775, *15 (M.D. Pa. 2015) (citing

---

[3] The Due Process Clause provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

Kingsley v. Hendrickson, 576 U.S. 389, 392 (2015)). In other words, courts examine whether the actions of the officer were " 'rationally related to a legitimate nonpunitive governmental purpose.' " Robinson v. Danberg, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015)). The touchstone of this inquiry is whether the force used was punitive in nature. Id. In making this determination, courts "consider the so-called Kingsley factors: '[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.' " Id.

Under the facts of this case, we face a similar impasse to granting summary judgment as under the Fourth Amendment standards. Applying the Kingsley factors, we would reach differing results based on whether we credit the Troopers' version of events or Bennett's account. Adopting the Troopers' version of the facts, the need for the use of force was great in light of the escalation between Bennett and Judge Plummer, which created a heightened security problem, especially after Bennett moved forward in his seat toward Judge Plummer contrary to repeated instructions from the Troopers to remain where he was. The Troopers described the situation as tense, and thus reasonably believed that Bennett was actively resisting their

commands when he moved toward Judge Plummer. Therefore, the Troopers felt that the application of force would be necessary to prevent Bennett from harming Judge Plummer. They claim that the amount of force used was tailored to reflect the need, and the resulting injury to Bennett was minimal. Based on these assertions, the Troopers' position is that the force used could not have been punitive.

For Bennett's part, he asserts that there was no need whatsoever for the application of any force, and that Trooper Lopez made no effort whatsoever to temper or limit his use of force. Since Bennett claims that he was merely having a conversation with Judge Plummer regarding his arraignment, there was no security problem present. Bennett posits that he merely shifted forward in his seat to get a better view of the paperwork presented by Judge Plummer, rather than actively resisting or disobeying the Troopers' commands. On the basis of these facts, Bennett asserts that the Troopers could not reasonably have perceived Bennett as a threat to Judge Plummer, especially in light of the fact that Bennett remained handcuffed throughout the proceedings. Thus, Bennett views the force used by the Troopers as excessive, unreasonable, and causing greater injury than was necessary under the circumstances.

As we explained above, it is emphatically not the province of the court to weigh evidence or assess credibility. Further, without the benefit of the words exchanged or the tone used, it is impossible for us to determine whether the

Troopers' use of force was appropriate during Bennett's arraignment. If, as the Troopers describe, there was an escalating and potentially violent situation arising between Bennett and Judge Plummer based on their words and tone, i.e., incendiary language and yelling, some level of force may have been justified. In contrast, if Bennett was merely having a discussion with Judge Plummer about his charges and both parties retained a level tone and civil discussion, Trooper Lopez's actions would almost certainly have been unjustified and contrary to Bennett's constitutional rights. However, we may not speculate as to which party presents the correct version of the events on May 12, 2017. Thus, this lack of audio once again precludes us from determining whether the actions of the Troopers were reasonable under the circumstances in this case and accordingly recommend that the cross-motions for summary judgment be denied on Fourteenth Amendment grounds.

With respect to Bennett's failure to intervene claim against Trooper Paduck, we note that "[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, as we have described above, it is not clear whether a constitutional violation occurred in this case. Absent the presence of a constitutional violation, we cannot determine whether Trooper Paduck had an obligation to intervene to prevent Trooper Lopez's use of force. Therefore,

we recommend that the parties' cross-motions for summary judgment likewise be denied as to this claim.

Finally, in his motion for summary judgment, Bennett also argues that he is entitled to summary judgment against Defendant Lopez since Defendant Lopez failed to timely respond to Bennett's requests for admissions after being served with such requests in April of 2018. Bennett does not contend that Defendant Lopez never provided this discovery, but rather asserts that these late discovery responses should cause this court to deem these statements admitted by Defendant Lopez by operation of Federal Rule of Civil Procedure 36(a)(3).

Bennett is correct that requests for admissions not received within 30 days are deemed admitted under Federal Rule of Civil Procedure 36(a)(3). We note, however, that the Third Circuit has a strong preference for reaching the merits of issues, rather than having the Rules of Civil Procedure, which serve as a tool to aid the progression of litigation, and their built-in sanctions, control the outcome of a given case. See United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161-62 (3d Cir. 2003) (noting "the sanction of dismissal [as a discovery sanction] is disfavored" and recommending "the resolution of any doubts in favor of adjudication on the merits"); Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 982 (3d Cir. 1988) ("[T]his Court has adopted a policy of disfavoring default judgments and encouraging decisions on the merits."); Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) ("[W]e have

repeatedly stated our preference that cases be disposed of on the merits whenever practicable."). Indeed, courts in this Circuit have stated that "deemed admissions should prevail over 'the quest for the truth only in extreme circumstances.' " Miller v. Green Tree Consumer Discount Co. (In re Miller), 1999 Bankr. LEXIS 1425, *12 (E.D. Pa. 1999) (quoting Kauffman v. U.S. Dept. of Labor, 1997 U.S. Dist. LEXIS 19905, 39 Fed. R. Serv. 3d 1175 (E.D. Pa. 1997)).

Despite this apparent procedural misstep by defense counsel, we do not find that these deemed admissions by Defendant Lopez alter the summary judgment outcome in this case. These requests for admission merely state general factual principles which have no bearing on the merits discussion at issue in these motions for summary judgment. Indeed, we have found that under either standard, the Fourth or Fourteenth Amendment, summary judgment is inappropriate in this case. In addition, the question of whether Trooper Lopez violated the Pennsylvania State Police's standards governing the use of force have no direct bearing on our analysis of the constitutional questions presented to us in this case. Therefore, we maintain our recommendation that these motions for summary judgment be denied.[4]

---

[4] Recognizing that defense counsel may not wish to be locked into these admission responses at trial, we note that "[a]ny matter [deemed] admitted . . . is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Fed. R. Civ. P. 36(b). On this score,

> The Court has considerable discretion in determining whether to allow
> withdrawal or amendment of an admission. Skoczylas v. Atlantic

## C.    **Qualified Immunity**

Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223, 231 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity

---

Credit & Finance, Inc., No. Civ. A. 00-5412, 2002 WL 55298, *3 (E.D. Pa. Jan. 15, 2002). " 'Clearly, no absolute right to withdraw admissions exists.' " Id. (quoting In re Fisherman's Wharf Fillet, Inc., 83 F. Supp. 2d 651, 661 (E.D. Va. 1999)). However, a disposition on the merits is preferred over a decision based upon procedural technicalities. Id. As such, Rule 36(b) provides a two-part, conjunctive inquiry. First, the moving party, here Defendants, must establish that withdrawal or amendment will "subserve" the presentation of the merits. Fed. R. Civ. P. 36(b); see also Dunn v. Hercules, Inc., Civ. A. No. 93-4175, 1994 WL 194542, *1 (E.D. Pa. May 12, 1994). Second, the nonmoving party . . . must fail to show he would be prejudiced by permitting Defendants to amend or withdraw their admissions. Fed. R. Civ. P. 36(b); see also The Maramont Corp. v. B. Barks & Sons., Inc., No. Civ. A. 97-5371, 1999 WL 55175, *3 (E.D. Pa. Jan. 13, 1999).

Petrunich v. Sun Bldg. Sys., 2006 U.S. Dist. LEXIS 69043, *9-10 (M.D. Pa. 2006).

applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223. If the defendants did not actually commit a constitutional violation, then the court must find in the defendants' favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 230; Saucier, 533 U.S. at 201-02. The Supreme Court of the United States has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his or her conduct violates that constitutional right. Williams v. Bitner, 455 F.3d 186, 191 (3d Cir. 2006) (citing Saucier, 533 U.S. at 202). Thus, qualified immunity serves to "protect officers from the sometimes hazy border between excessive and acceptable force . . . ." Saucier, 533 U.S. at 206 (quotation omitted).

Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by that particular case. <u>Pearson</u>, 555 U.S. at 236. Thus, a court may forego difficult constitutional issues and confer qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. <u>Id.</u>

In this case, we have already determined that summary judgment is inappropriate as to Bennett's excessive force claims under the Fourth and Fourteenth Amendments due to factual disputes regarding the circumstances surrounding the Troopers' use of force. In particular, the missing audio portion of this encounter is crucial to an assessment of the officers' statement of mind at the time that Bennett was slapped and forcibly restrained. This missing audio would provide essential context concerning whether the trooper's actions were intended to be punitive or constituted to reasonable response to and escalating threat posed by Bennett. Where questions of motive, intent or state of mind are both crucial and disputed summary judgment on qualified immunity grounds is often inappropriate. As we have observed:

> [D]efendants may not avail themselves of qualified immunity as a matter of law . . . , where each party advances diametrically opposing positions regarding the motives of the other. When confronting a claim of qualified immunity which is premised upon factual disputes regarding human motivation we are reminded that: "Although qualified immunity is a question of law determined by the Court, when qualified

immunity depends on disputed issues of fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir. 1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination.").

Knowledge, motive and intent are questions of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir. 2002)." Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006). Since "motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor", id., the profound, and profoundly factual, dispute between [plaintiff] and the defendants regarding these matters of knowledge, intent and motive preclude summary judgment on qualified immunity grounds. See Robinson v. Marsh, No. 3:11-CV-1376, 2015 WL 11017976, at *7 (M.D. Pa. Feb. 2, 2015), report and recommendation adopted, No. 3:11-CV-1376, 2015 WL 11018838 (M.D. Pa. Feb. 25, 2015).

Roque v. Ott, No. 1:16-CV-2506, 2019 WL 6220947, at *6 (M.D. Pa. Feb. 5, 2019), report and recommendation adopted, No. 1:16-CV-2506, 2019 WL 1282651 (M.D. Pa. Mar. 20, 2019).

So it is here where the parties fundamentally dispute matters of motive, intent and state of mind—a key component of this qualified immunity analysis. Based on these material disputes of fact, we cannot reach the question of whether qualified immunity is appropriate at this time and accordingly recommend that the defendants' motion for summary judgment be denied on these grounds.

**D.    State Law Assault Claims**

Bennett also brings state law claims of assault against Troopers Lopez and Paduck. Under Pennsylvania law, "[t]he tort of assault requires that the defendant act with the intent to place the plaintiff in apprehension of imminent harmful or offensive bodily contact and that the plaintiff actually experience such apprehension." Dull v. W. Manchester Twp. Police Dep't, 604 F. Supp. 2d 739, 754 (M.D. Pa. 2009) (citing Heverly v. Simcox, No. 4:05-1370, 2006 WL 2927262, *9 (M.D. Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763 A.2d 424, 431 n.2 (Pa. Super. 2000)). Thus, "[a]ssault is an intentional attempt by force to do an injury to the person of another[.]" Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) (quoting Cohen v. Lit Brothers, 70 A.2d 419, 421 (Pa. Super. 1950) (quotation marks and citation omitted)). While not raised by the defendants, we find that sovereign immunity may shield them from liability in this case.

Under Pennsylvania law, the Commonwealth, its agencies, and employees enjoy broad immunity from most state-law tort claims, as the General Assembly has by statute provided that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. § 2310; see also Moore v. Commonwealth, 538 A.2d 111, 115 (Pa. Commw. 1988) ("In other words, if the

Commonwealth is entitled to sovereign immunity under Act 152, then its officials and employees acting within the scope of their duties are likewise immune."). This grant of immunity "applies to Commonwealth employees in both their official and individual capacities, so long as the employees are 'acting within the scope of their duties.' " Larsen v. State Employees' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008). Conduct of an employee is within the scope of employment if " 'it is of a kind and nature that the employee is employed to perform; [and] it occurs substantially within the authorized time and space limits . . . .' " Brautigam v. Fraley, 684 F. Supp. 2d 589, 593-94 (M.D. Pa. 2010); see also Faust v. Dep't of Revenue, 592 A.2d 835 (1991) (holding that a Commonwealth employee was protected under sovereign immunity from liability from intentional acts which caused emotional distress when he was acting within the scope of his duties). Thus, so long as the agent or employee is acting within the scope of his employment, and none of the nine recognized statutory exceptions apply,[5] sovereign immunity will bar any state law claims against him.

---

[5] In 42 Pa. Cons. Stat. § 8522(b), the General Assembly defined nine separate, narrow exceptions to the broad grant of sovereign immunity. These exceptions include: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. "Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed." Lockwood v. City of Pittsburgh, 751 A.2d 1136, 1139 (Pa. 2000) (citation omitted).

In particular, as this court has noted in the past:

> Pennsylvania courts have consistently found sovereign immunity applies to intentional torts. See La Frankie, 618 A.2d at 1149; see also Stone v. Felsman, No. 3:10-CV-0442, 2011 WL 5320738, *11 (M.D. Pa. Nov. 1, 2011) (finding state law claims of assault, battery, false arrest, false imprisonment, and malicious prosecution are barred by sovereign immunity); Fischer v. Pa. State Police, No. 4:07-CV-1653, 2009 WL 650251, *12 (M.D. Pa. Mar. 10, 2009) (holding claim of intentional infliction of emotional distress against Pennsylvania State Police is barred by sovereign immunity).

Luck v. Asbury, No. 3:12-CV-0887, 2013 WL 433536, *4 (M.D. Pa. Feb. 5, 2013).

Therefore:

> As a general matter, subject only to nine specific statutory exceptions, this sovereign immunity bars state law tort claims like those alleged here, since Commonwealth employees are immune from liability for either negligence or intentional torts. McGrath [v. Johnson], 67 F. Supp. 2d at 511, aff'd, 35 F. App'x 357 (3d Cir. 2002). In fact, courts have repeatedly concluded that claims for intentional infliction of emotional distress brought against Commonwealth employees arising out of actions taken by those employees within the scope of their official duties are barred by sovereign immunity. See, e.g., Ray v. Pennsylvania State Police, 654 A.2d 140, 141 (Pa. Commw. 1995), aff'd, 676 A.2d 194 (1996) (citing Pickering v. Sacavage, 642 A.2d 555, appeal denied, 652 A.2d 841 (No. 275 M.D. Alloc. Dkt., filed December 5, 1994) (holding that a state trooper acting within the scope of his duties is protected by sovereign immunity from intentional infliction of emotional distress claims)).

Colon v. Kenwall, No. 1:18-CV-840, 2018 WL 5809863, *6 (M.D. Pa. Nov. 6, 2018).

Thus, Troopers Lopez and Paduck are only entitled to sovereign immunity on Bennett's state law claims if they were acting within the scope of their employment.

On this score, the Pennsylvania Supreme Court has recently addressed the question of how these sovereign immunity benchmarks apply to police assault claims which involve factual disputes regarding the actions and intent of the officers. In Justice v. Lombardo, 208 A.3d 1057 (Pa. 2019) the Supreme Court considered this issue in the context of a state law assault claim against a state trooper arising out of a fracas on the Schuylkill Expressway in Philadelphia. At trial, a jury found in favor of the plaintiff who alleged that she was assaulted by the trooper. Post-verdict, the trooper asserted the bar of sovereign immunity, a view that was accepted as a matter of law by the lower courts, but was reversed by the Supreme Court.

In reversing the entry of a judgment as a matter of law in favor of the trooper, Supreme Court set clear benchmarks for the evaluation of sovereign immunity defenses on disputed facts stating that:

> We have long held that whether a particular act of an employee is within the scope of his employment is ordinarily a question of fact for the jury. Orr, 12 A.2d at 27; Brennan v. Merchant & Co., Inc., 205 Pa. 258, 54 A. 891, 892 (1903) (citing Guinney v. Hand, 153 Pa. 404, 26 A. 20 (1893)). We have explained that the only exception to this well-established rule is where neither the facts nor the inferences to be drawn from them are in dispute. Orr, 12 A.2d at 27 (citing Brennan, 54 A. at 892). In such a case, the court may decide the scope of employment question as a matter of law. Brennan, 54 A. at 892. However, where more than one inference may be drawn from the facts, the issue of whether an employee was acting within the scope of employment is for the jury. See Iandiorio v. Kriss & Senko Enterprises, Inc., 512 Pa. 392, 517 A.2d 530, 534 (1986).

Justice v. Lombardo, 208 A.3d 1057, 1068 (Pa. 2019).

As in <u>Justice,</u> here there is significant dispute that the defendants were acting within the scope of their employment as police officers, since Bennett maintains that the Troopers' actions were unreasonable and violated his constitutional rights while the Troopers counter that the force used was progressive and appropriate based on the circumstances presented. Accordingly, we conclude that the application of sovereign immunity presents a question of fact for a jury.

Because sovereign immunity serves to completely shield the defendants from liability, but we find that its applicability is a question which should be presented to a jury, we cannot grant either party's motion for summary judgment on Bennett's state law claims for assault and accordingly recommend that these motions be denied.

## IV.    <u>Recommendation</u>

For the foregoing reasons it is RECOMMENDED that the parties' cross-motions for summary judgment, (Docs. 62, 68, 74), be DENIED.

The parties are hereby placed on notice that <u>pursuant to Local Rule 72.3:</u>

Any party may object to a magistrate judge's proposed findings, recommendations, or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of September, 2020.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge